[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10723

_____

D.C. Docket No. 5:17-cr-00020-RH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RALPH HERMAN FOX, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 13, 2019)

Before TJOFLAT, MARTIN, and TRAXLER,* Circuit Judges.

MARTIN, Circuit Judge:

Ralph Fox, Jr. appeals his 360-month sentence imposed after he pled guilty to one count of sexually exploiting a minor through the production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e).  He argues the District Court improperly calculated his guideline range by applying a five-level upward enhancement to his base offense level.  He also argues his 360-month sentence is substantively unreasonable because the District Court failed to properly consider his age when imposing his sentence.  After careful consideration, and with the benefit of oral argument, we affirm.

## I.  FACTS

On September 12, 2016, Mr. Fox's wife reported to the police that Fox had sexually abused her two minor granddaughters, G.P., who was eleven, and J.P., who was nine.  At the time, Mr. Fox was G.P. and J.P.'s step-grandfather.  A Child Protection Team interviewed both G.P. and J.P.  G.P. informed the interviewers that Mr. Fox had sexually abused her for about one year; had molested her "almost nightly"; had taken naked photos of her with his cell phone; had used a grey vibrator, which he kept hidden in a shed, to penetrate her vagina; and that she had

_____

* Honorable William Traxler, Jr., Senior United States Circuit Judge for the Fourth Circuit, sitting by designation.

2

observed Mr. Fox abusing J.P.  J.P. reported she had not been sexually abused for as long as G.P.; Mr. Fox had also molested her "almost nightly" while her grandmother was sleeping; and she had observed Mr. Fox sexually abuse G.P. Medical examinations of G.P. and J.P. were consistent with their reported abuse.

A state search warrant was executed for Mr. Fox's home, automobile, and cell phone.  The State found a grey vibrator hidden in a shed at Mr. Fox's home, which corroborated G.P.'s statements to the interviewers.  A forensic examination of Mr. Fox's cell phone revealed 30 deleted images, including images of G.P.'s vaginal area and of Fox sexually abusing her.  Although the photos did not show Mr. Fox or G.P.'s faces, G.P. identified Fox and herself in the photos.  Mrs. Fox also identified her husband in the photos.  The photos were not timestamped, but they showed G.P. in different outfits and in different positions.  G.P. also told the investigators the photos were taken on different days.

Pursuant to a plea agreement, Mr. Fox pled guilty to one count of sexually exploiting a minor through the production of child pornography.  The PSR calculated a total offense level of 43 and a guideline range of exactly 360 months—or 30 years.  Normally, an offense level of 43 would produce a guideline range of life, but the statutory maximum for Mr. Fox's offense is 30 years.  See United States Sentencing Guidelines § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum applicable guideline range, the

3

statutorily authorized maximum sentence shall be the guideline range.").  The PSR's calculation included several offense characteristic enhancements, including a five-level enhancement under guidelines § 4B1.5(b)(1) because Mr. Fox "engaged in a pattern of activity involving prohibited sexual conduct."

Mr. Fox objected to the PSR's five-level enhancement under § 4B1.5(b)(1), arguing it applied only to circumstances where there have been "two separate and distinct crimes and allegations" of prohibited sexual activity against the defendant. The District Court overruled this objection and concluded that the PSR "correctly applie[d] the increase in the offense level for a pattern of activity involving prohibited sexual conduct under § 4B1.5(b)(1)."  The District Court observed that Mr. Fox had engaged in "repeated misconduct [with] two different victims" over a "substantial period of time"; his actions solely against "just one victim" would have met the enhancement under § 4B1.5(b)(1); and Mr. Fox's conduct was "the very paradigm of a situation where the increase [under § 4B1.5(b)(1) was] appropriate."

At sentencing, Mr. Fox also argued a 240-month sentence was appropriate because he was 60 years old.  Mr. Fox pointed out as well that the government recommended a 240-month sentence pursuant to his plea agreement.  The District Court rejected Mr. Fox and the government's recommendations and imposed a 360-month sentence.  This appeal followed.

4

## II.  STANDARDS OF REVIEW

This Court reviews <u>de novo</u> the District Court's interpretation of the guidelines and its application of the guidelines to the facts.  <u>United States v. Moran</u>, 778 F.3d 942, 959 (11th Cir. 2015).  We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard.  <u>Gall v. United States</u>, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).

## III.  DISCUSSION

In reviewing the reasonableness of a sentence, we follow a two-step process. <u>United States v. Trailer</u>, 827 F.3d 933, 935 (11th Cir. 2016) (per curiam).  We first ensure the sentence was procedurally reasonable by reviewing whether, among other things, the District Court miscalculated the guideline range.  <u>Id.</u> at 936.  We then determine whether the sentence is substantively reasonable in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors.  <u>Id.</u>

Mr. Fox raises two issues on appeal.  He first contends his sentence is procedurally unreasonable because the District Court improperly calculated his guideline range when it applied the five-level enhancement under § 4B1.5(b)(1). Second, he argues his 360-month sentence is substantively unreasonable because of his age.  We address each of his arguments in turn, concluding that Mr. Fox cannot prevail on either of them.

5

A.  PROCEDURAL REASONABLENESS

To interpret the guidelines, "we begin with the language of the [g]uidelines, considering both the [g]uidelines and the commentary." United States v. Fulford, 662 F.3d 1174, 1177 (11th Cir. 2011) (quotation marks omitted).  The guidelines commentary is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of," the guidelines.  Id. (quotation marks omitted).  We first derive the meaning of a guideline from its plain language, United States v. Mandhai, 373 F.3d 1243, 1247 (11th Cir. 2004), and we may look to the amendment history behind the guidelines for guidance about their interpretation.  See United States v. Gordillo, 920 F.3d 1292, 1297–98 (11th Cir. 2019).[1]

Section 4B1.5(b)(1) provides, in relevant part, that a five-level sentence enhancement should be applied when "the defendant engaged in a pattern of activity involving prohibited sexual conduct."  USSG § 4B1.5(b)(1).  Application

---

[1] Congress made part of the Commission's mission to "periodically [ ] review and revise, in consideration of comments and data coming to its attention, the guidelines."  28 U.S.C. § 994(o).  The Commission remarked on this mission when it originally introduced the guidelines manual, where it "emphasize[d] . . . that it views the guideline-writing process as evolutionary [and] . . . [i]t expects . . . that continuing research, experience, and analysis will result in modifications and revisions to the guidelines through submission of amendments to Congress.").  USSG ch. 1, pt. A, subpt. 1, at 2.  While this Court applies the "traditional rules of statutory construction" to the interpretation of the guidelines, Gordillo, 920 F.3d at 1298 (quotation marks omitted), the Commission's amendment of Application Note 4—and the Commission's practice of amending the guidelines generally—provide insight because they demonstrate the Commission's role in monitoring and modifying the guidelines.

6

Note 4(B)(i) to § 4B1.5(b)(1) defines "pattern of activity involving prohibited sexual conduct" for purposes of the five-level enhancement.  It states that "a defendant [has] engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant [has] engaged in prohibited sexual conduct with a minor."  USSG § 4B1.5 cmt. n.4(B)(i).

First, Mr. Fox argues the District Court was wrong to apply the § 4B1.5(b)(1) enhancement to his offense because the enhancement implicitly requires multiple victims and he pled guilty only to photographing one minor victim.  This Court has not yet addressed this issue—that is, whether § 4B1.5(b)(1) requires multiple victims—in any published decision.[2]  But our review shows that the Second, Sixth, and Eighth Circuits do have binding precedent on this issue.  Each of those courts have concluded that Application Note 4(B)(i)'s use of "a minor" demonstrates that the § 4B1.5(b)(1) enhancement applies when the defendant engages in repeated prohibited sexual conduct with the same minor.  See United States v. Pappas, 715 F.3d 225, 229 (8th Cir. 2013) (explaining that the use of "a minor" in Application Note 4(B)(i) shows that repeated sexual offenses against the same minor meet § 4B1.5(b)(1)); United States v. Brattain, 539 F.3d 445, 447–48 (6th Cir. 2008) (holding that the use of "a minor" in Application Note

---

[2] We have done so in an unpublished decision, see United States v. Batson, 749 F. App'x 804 (11th Cir. 2018) (per curiam) (unpublished), where we concluded that prohibited sexual conduct against one minor victim could satisfy the § 4B1.5(b)(1) enhancement.  Id. at 807.

4(B)(i) demonstrates that repeated sexual offenses against the same victim also meet § 4B1.5(b)(1)); United States v. Phillips, 431 F.3d 86, 90 n.5 (2d Cir. 2005) (" Under Application Note 4 . . . the pattern [requirement] can be satisfied by the exploitation of one minor, instead of two." (quotation marks omitted)).

We now join our sister circuits.  Application Note 4(B)(i) explicitly states that a defendant has engaged in "a pattern of activity" if the defendant has "on at least two separate occasions" participated in prohibited sexual conduct with "a minor."  USSG § 4B1.5 cmt. n.4(B)(i) (emphasis added).  The guideline's use of "a minor" shows that repeated prohibited sexual conduct with a single victim may qualify as a "pattern of activity" for purposes of § 4B1.5(b)(1).  Our Court has explained in other contexts that when followed by a modifier, "a" is synonymous with "one."  United States v. Warren, 820 F.3d 406, 408 (11th Cir. 2016) (per curiam) ("[I]n common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, [it] typically signals that the article is being used as a synonym for . . . 'one.'" (quotation marks omitted)).  Given the use of "a minor" in defining a "pattern of activity," the plain language of Application Note 4(B)(i), and thus § 4B1.5(b)(1), allows for multiple sexual offenses committed against the same minor.

Because the plain meaning of Application Note 4(B)(i) is clear, it is not imperative that we examine the amendment history for additional guidance.  See

8

Mandhai, 375 F.3d at 1247.  Yet the Sentencing Commission's actions related to this amendment also tell us the District Court reached the correct result.  Before 2003, Application Note 4 required at least two minor victims for a defendant to be considered a repeat offender, with the resulting five-level enhancement.  See USSG § 4B1.5 cmt. n.4(B)(i) (2002) ("[T]he defendant engaged in a pattern of activity involving prohibited sexual conduct if . . . (II) there were at least two minor victims of the prohibited sexual conduct." (emphasis added)).  However, in 2003, the Commission recommended a change, and Congress amended Application Note 4 to eliminate this requirement.  See USSG § 4B1.5(B)(1) cmt. n.4(B)(i) (2003).  It adopted the language that a "defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions the defendant engaged in prohibited sexual conduct with a minor."  See id. (emphasis added).  In amending Application Note 4, Congress expressly found the previous language did not "adequately take account of the frequent occurrence of repeated sexual abuse against a single child victim, and the severity of the harm to such victims from the repeated abuse."  H.R. Conf. Rep. No. 108-66, at 59 (2003) (emphasis added).

As a result, Mr. Fox's repeated sexual exploitation of G.P.—a single victim—is sufficient to meet a "pattern of sexual activity" under § 4B1.5(b)(1) as

9

indicated by both its plain meaning and amendment history.  The District Court did not err when it applied this five-level enhancement to Mr. Fox's guideline range.

Mr. Fox next contends his conduct is not covered by § 4B1.5(1)(b) because the provision requires two unrelated instances of prohibited sexual conduct.[3]  Mr. Fox cites two unpublished cases in support of his argument: (1) United States v. Syed, 616 F. App'x 973 (11th Cir. 2015) (per curiam) (unpublished), and United States v. Castleberry, 594 F. App'x 612 (11th Cir. 2015) (per curiam) (unpublished).  In Syed, the panel held that a five-level enhancement was correctly applied under § 4B1.5(b)(1) because the evidence at trial showed the defendant had sexually enticed two different minors online and through text messages.  616 F. App'x at 981–83.  Similarly, in Castleberry, this Court upheld a five-level enhancement where the evidence showed the defendant attempted to entice a minor online on two earlier occasions separate from the charged conduct.  594 F. App'x at 612–13.  Both cases address instances in which the defendant engaged in multiple, unrelated instances of prohibited sexual conduct.  But they do not support Mr. Fox's argument that two unrelated occasions of prohibited sexual conduct are

---

[3] Mr. Fox specifically argues that § 4B1.5(b)(1) requires "at least two separate and distinct crimes and allegations."  But he does not elaborate on this point any further.  Neither did he discuss it at oral argument.  Given that, and given the cases he points to on appeal, we understand his argument as an assertion that § 4B1.5(b)(1) requires two unrelated instances of prohibited sexual conduct.

required for the enhancement to apply. They simply show that earlier, distinct conduct is one way sufficient to meet the requirements of § 4B1.5(b)(1).

The plain language of Application Note 4(B)(i) refutes Mr. Fox's assertion that multiple, unrelated occasions of prohibited sexual conduct are necessary to meet § 4B1.5(b)(1). As set out above, Application Note 4(B)(i) explains that a defendant engages in a pattern of prohibited sexual conduct "if [he or she acts] on at least two separate occasions." USSG § 4B1.5 cmt. n.4(B)(i) (emphasis added). An "occasion" means "an event" or "an occurrence." See Oxford English Dictionary (3d ed. 2004). And "separate" is defined as "withdrawn or divided from something else so as to have an independent existence by itself." Id.; see also Webster's New College Dictionary 1030–31 (3d ed. 2008) (defining "separate" as "[s]et apart from others" and "[e]xisting by itself"). The plain meaning of "separate occasions" does not require two events that are unrelated. It requires only events that are independent and distinguishable from each other. Multiple, distinct instances of abuse—whether ongoing, related, or random—meet the enhancement under § 4B1.5(b)(1).

Again here, the amendment history of § 4B1.5(b)(1) supports this conclusion. Congress specifically contemplated that the five-level enhancement under § 4B1.5(b)(1) should apply in circumstances where a minor victim is repeatedly abused by the same perpetrator on separate occasions. See H.R. Conf.

11

Rep. No. 108-66, at 59 (2003). Interpreting § 4B1.5(b)(1) as Mr. Fox describes would not apply the enhancement to circumstances where a minor is sexually abused more than once by the same person solely because each instance of ongoing abuse is considered "related" to the others. This interpretation comports with neither the plain meaning of the guideline commentary nor Congress's stated intentions in amending Application Note 4. For these reasons, we are not persuaded by Mr. Fox's second argument that unrelated instances of prohibited sexual abuse are required for an enhancement under § 4B1.5(b)(1). Mr. Fox's ongoing, repeated abuse of G.P. therefore qualifies as the basis for the enhancement under § 4B1.5(b)(1).

Last, Mr. Fox argues § 4B1.5(b)(1) does not apply because it does not allow for the conduct underlying a conviction to be used to enhance a defendant's sentence. But again here, the plain meaning of the guidelines forecloses Mr. Fox's argument. Specifically, Application Note 4(B)(ii) to § 4B1.5(b)(1) states that an "occasion" of prohibited sexual conduct may be considered "without regard to whether the occasion . . . occurred <u>during the course of the instant offense</u>." <u>See</u> USSG § 4B1.5 cmt. n.4(B)(ii) (emphasis added). The enhancement under § 4B1.5(b)(1) therefore applies regardless of whether the separate occasions of prohibited sexual conduct occurred during the course of the underlying offense of conviction.

12

This interpretation is not novel.  In United States v. Rothenberg, 610 F.3d 621 (11th Cir. 2010), this Court upheld an enhancement imposed under § 4B1.5(b)(1) because either of the defendant's two earlier instances of prohibited sexual conduct, "when joined with the offense of conviction," amounted to a pattern of activity involving prohibited sexual conduct.  Id. at 625 n.5.  In that sense, this Court specifically contemplated that the underlying offense of conviction could be a basis for a § 4B1.5(b)(1) enhancement.

And other circuits that have examined this issue have reached the same result.  See United States v. Evans, 782 F.3d 1115, 1117 (10th Cir. 2015) ("The plain language of the commentary makes clear that the conduct underlying the present offense of conviction . . . may provide the 'pattern of activity' covered by § 4B1.5(b)."); United States v. Broxmeyer, 699 F.3d 265, 285 (2d. Cir. 2012) ("'[S]eparate' means the two occasions must be separate from each other, not that the two occasions demonstrating a pattern must be separate from (and in addition to) the crime of conviction."); United States v. Rojas, 520 F.3d 876, 883 (8th Cir. 2008) (holding that the five-level enhancement under § 4B1.5(b)(1) can apply where "the only 'pattern of . . . conduct' is conduct involved in the present offense of conviction" under the language of Application Note 4).  We now join them and hold that a defendant's underlying criminal conviction alone can serve as the basis

13

for an enhancement under § 4B1.5(b)(1), provided that the underlying conviction involves separate occasions of prohibited sexual conduct.

Thus, the five-level enhancement under §4B1.5(b)(1) applies to Mr. Fox's offense and the District Court did not miscalculate his guideline range during sentencing. His sentence is therefore not procedurally unreasonable. See Trailer, 827 F.3d at 936.

B. SUBSTANTIVE REASONABLENESS

Mr. Fox argues his sentence is substantively unreasonable because it is too long given his age. He says a sentence of 240 months is more appropriate. Specifically, Mr. Fox argues his sentence is "excessively harsh" and unreasonable because of the low probability he will survive his term of imprisonment.

When sentencing a defendant, a district court must consider the factors set forth in 18 U.S.C. § 3553(a), which include, in relevant part, the "nature and circumstances of the offense and the history and characteristics of the defendant" when determining a reasonable sentence. United States v. Irey, 612 F.3d 1160, 1198 (11th Cir. 2010) (en banc) (quotation marks omitted). The weight given to any specific § 3553(a) factor is left to the district court's discretion, United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007), and this Court does not substitute its judgment for that of the District Court's in weighing the relevant factors. United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007).

14

"A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." Irey, 612 F.3d at 1189 (quotation marks omitted). As the party challenging his sentence, Mr. Fox has "the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." United States v. Rosales-Bruno, 789 F.3d 1249, 1256 (11th Cir. 2015).

We confronted a similar argument in United States v. Joseph, 709 F.3d 1082 (11th Cir. 2013). In Joseph, a jury found the defendant guilty of one count of unlawfully dispensing or distributing a controlled substance that caused death or serious bodily injury. Id. at 1105. His conviction carried a mandatory minimum sentence of 20-years imprisonment, a statutory maximum of life in prison, and his guideline range was 30 years to life imprisonment. Id. The District Court sentenced the defendant to 30-years imprisonment. Id. On appeal, the defendant argued his sentence was substantively unreasonable because "the purposes of sentencing [could have been] achieved with the mandatory minimum sentence . . . not a sentence of 30 years, which effectively amount[ed] to a life sentence." Id. This Court concluded the District Court did not abuse its discretion when it

15

sentenced Mr. Joseph to 30-years imprisonment given the nature of his crime and the fact that his sentence was within his guideline range.  Id.

The same result follows here.  The District Court did not abuse its discretion in imposing Mr. Fox's sentence.  At sentencing, the District Court heard from Mr. Fox that he was 60 years old and would not likely outlive a 360-month sentence. Although the District Court considered Mr. Fox's age, it ultimately determined the nature of Fox's offense outweighed any age-related concerns.  It is not an abuse of discretion to afford more weight to one of the § 3553(a) factors.  See Clay, 483 F.3d at 743.  The District Court therefore did not abuse its discretion when it sentenced Mr. Fox to 360-months imprisonment and, as a result, his sentence is substantively reasonable.

**AFFIRMED.**