[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10318

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JIMMY LEE SPENCER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:23-cr-00145-LSC-GMB-1

_____

Before NEWSOM, GRANT, and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Jimmy Spencer appeals his conviction and 48-month imprisonment sentence for possession with intent to distribute cocaine and marijuana.  On appeal, Spencer argues that the district court erred by denying his motion to suppress because the search warrant affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; thus, the good-faith exception did not apply.  Spencer also contends that the district court erred by applying a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) because it was clearly improbable that the firearms Spencer possessed related to the charged offense.  Third, Spencer argues that the district court erred by denying a two-level reduction under § 4C1.1 because he did not possess a firearm or other dangerous weapon "in connection with" the drug offense; thus, he was eligible for relief as a zero-point offender.  Lastly, Spencer asserts that his 48-month sentence was procedurally and substantively unreasonable because the district court failed to consider adequately the 18 U.S.C. § 3553(a) factors and did not engage in an individualized application of the factors to him.  Having reviewed the record and read the parties' briefs, we affirm Spencer's conviction and sentence.

I.

When reviewing the district court's order denying a motion to suppress, we review factual determinations for clear error and

24-10318                Opinion of the Court                3

questions of law *de novo*. *United States v. Thomas*, 818 F.3d 1230, 1239 (11th Cir. 2016).  We review *de novo* the district court's determination that the *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421 (1984), good-faith exception applies, but review the underlying facts upon which that determination was based for clear error.  *United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021).  The government bears the burden of demonstrating that the exception applies.  *Id*.  There is "no reason why that burden cannot be met by reference to facts stated within the affidavit." *United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003).

When considering a ruling on a suppression motion, we construe all facts in the light most favorable to the prevailing party below.  *Thomas*, 818 F.3d at 1239.  Clear error review is deferential, and we will not invalidate a district court's findings unless we are left with a "definite and firm conviction" that the court committed a mistake.  *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (quotation marks omitted).  "[A] district court's choice between two permissible views of the evidence . . . rarely constitute[s] clear error," if it is supported by the record and the court does not misapply a rule of law.  *Id*. (quotation marks omitted).  We may affirm on any ground supported by the record. *United States v. Thomas*, 32 F.4th 1073, 1077 (11th Cir. 2022).

The exclusionary rule prohibits the use of evidence seized during or due to an unlawful search.  *Murray v. United States*, 487 U.S. 533, 536, 108 S. Ct. 2529, 2533 (1988).  "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent

conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 702 (2009). A good-faith exception to the exclusionary rule applies to evidence obtained by an officer's good-faith reliance on a warrant, even if a court later finds that the warrant lacked probable cause. *Morales*, 987 F.3d at 973. "The *Leon* good faith exception requires suppression only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (quotation marks omitted).

The Supreme Court indicated in *Leon* that there are four situations where the good-faith exception does not apply: (1) where the issuing magistrate or judge was misled by information the affiant knew was false or was reckless in determining its veracity; (2) where the issuing magistrate or judge wholly abandoned his judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923, 104 S. Ct. at 3421.

At issue here is the third *Leon* exception to which we determine, under the totality of the circumstances, whether a reasonably well-trained officer would have relied upon the warrant. *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). In determining whether an affidavit lacks indicia of probable cause,

24-10318                 Opinion of the Court                 5

we look only at the face of the affidavit. *Robinson*, 336 F.3d at 1296. While we evaluate such situations on a case-by-case basis, we have "guidelines which help us determine what critical information should be included in a search warrant affidavit to establish a finding of probable cause." *Morales*, 987 F.3d at 975 (quotation marks omitted). Notably, "the affidavit should state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched and should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.* (quotation marks omitted). "If an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's veracity and basis of knowledge." *Martin*, 297 F.3d at 1314 (quotation marks omitted). "However, when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Id.* (quotation marks and brackets omitted).

We have indicated that if an affidavit "present[s] a close call," reliance on the warrant is "*not entirely unreasonable*." *Martin*, 297 F.3d at 1315 (quotation marks omitted). Further, we have determined that the good-faith exception applies to close calls and threshold cases. *See United States v. McCall*, 84 F.4th 1317, 1325 (11th Cir. 2023).

Where none of *Leon*'s exceptions preclude application of the good-faith exception, we "proceed to determine whether the executing officer reasonably relied upon the search warrant."

*Morales*, 987 F.3d at 974 (quotation marks omitted).  This "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," considering "all of the circumstances," but "eschew[ing] inquiries into the [executing officer's] subjective beliefs."  *Leon*, 468 U.S. at 922 n.23. 104 S. Ct. at 3420 n.23.  We may consider facts beyond the four corners of the search warrant and affidavit that were not presented to the issuing judge.  *Martin*, 297 F.3d at 1318-19.  Either party may, but need not, present extrinsic evidence showing good faith or a lack thereof.  *Robinson*, 336 F.3d at 1297 nn.6-7.  Suppression is required "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."  *Leon*, 468 U.S. at 926, 104 S. Ct. at 3422.

The record demonstrates that the district court did not err by denying Spencer's motion to suppress because the warrant affidavit was not so lacking in indicia of probable cause that an official would believe its existence was entirely unreasonable. The affidavit contained information from a confidential informant, a trash-pull, and physical surveillance that criminal activity related to marijuana and drug paraphernalia existed at Spencer's home. Moreover, the good-faith exception applied, as it cannot be said that a reasonably well-trained officer, considering all the circumstances, would have known that the search was illegal despite the authorization.  Thus, we affirm as to this issue.

## II.

A defendant convicted of an offense of possession with intent to distribute controlled substances receives a two-level enhancement where "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The commentary specifies that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, comment. (n.11(A)).

The government bears the initial burden of showing through a preponderance of the evidence that a firearm was present at the site of the charged conduct or that the defendant possessed the firearm during conduct associated with the offense. *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017). The government must show that the weapon had a "purpose or effect" with respect to the charged crime and that its presence was not a mere accident or coincidence. *Id.* (quotation marks omitted).

If the government meets this initial burden, the defendant must demonstrate that it was "clearly improbable" that the weapon related to the offense. *Id.* (quotation marks omitted). Failure to produce such evidence permits a district court to apply the enhancement. *United States v. Hall*, 46 F.3d 62, 63-64 (11th Cir. 1995). The guidelines impose a heavy burden to negate the connection and show it is clearly improbable. *George*, 872 F.3d at 1204; U.S.S.G. § 2D1.1(b)(1), comment. (n.11(A)). A firearm's proximity to drugs or drug-related items has the potential to facilitate the drug offense. *See George*, 872 F.3d at 1204. But where

a firearm is found in a residence and there is no evidence that any activities related to the drug conspiracy took place at the residence, applying an enhancement under § 2D1.1(b)(1) is improper. *United States v. Stallings*, 463 F.3d 1218, 1220-21 (11th Cir. 2006).

Sentencing courts may consider uncharged and acquitted conduct in determining the appropriate sentence. *United States v. Rushin*, 844 F.3d 933, 942 (11th Cir. 2016). "And, because it is impossible to know exactly why a jury found a defendant not guilty on a certain charge, a jury cannot be said to have necessarily rejected any particular fact when it returns a general verdict of not guilty." *United States v. Maddox*, 803 F.3d 1215, 1221 (11th Cir. 2015) (quotation marks omitted).

We conclude that, based on the record, the district court did not err in applying the two-level enhancement under U.S.S.G. § 2D1.1(b)(1). *See United States v. Carillo-Ayala*, 713 F.3d 82, 87 (11th Cir. 2013) (reviewing for clear error a district court's factual findings as to a firearm enhancement). The record supports the district court's findings that several firearms were found in Spencer's home and vehicles that were positioned in such a way that they were intended to protect Spencer and his drug business. The close proximity of the firearms to the drugs, the safe, and the money would lead a reasonable person to believe that the firearms were related to the drug activity. Additionally, Spencer cannot meet his burden to show that it was clearly improbable that the firearms were connected to the charged drug offense. *See United States v. Graham*, 123 F.4th 1197, 1288-89 (11th Cir. 2024) (determining that

an enhancement was proper because the firearms were present at the site of the charged conduct and that it could not be shown that "it was 'clearly' improbable that the firearms were connected to the drugs, which were close to each other"). Therefore, we affirm as to this issue.

## III.

We review *de novo* the district court's interpretation of a sentencing guideline using traditional rules of statutory construction. *United States v. Warren*, 820 F.3d 406, 407 (11th Cir. 2016). Thus, a guideline meaning is derived first from its plain language and absent any ambiguity, no additional inquiry is necessary. *Id.* "We presume the inclusion or exclusion of language in the [Sentencing Guidelines] is intentional and purposeful." *Id.* (quotation marks omitted).

In 2023, Amendment 821 to the Sentencing Guidelines went into effect. *See* U.S. Sentencing Commission, *Adopted Amendments (Effective November 1, 2023)*, Amendment 821 ("Amendment 821"). The amended guideline added a new section, U.S.S.G. § 4C1.1 (2023), titled "Adjustment for Certain Zero-Point Offenders," which provides for a two-level decrease in a defendant's offense level if the defendant has zero criminal history points and satisfies ten other criteria. *Id.* As relevant, one of the criterion is that "the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 4C1.1(a)(7).

The safety-valve provision in U.S.S.G. § 5C1.2 includes language that a defendant is ineligible for relief under the safety valve if, among other things, "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *See* U.S.S.G. § 5C1.2(a)(2). In interpreting the similar language under the safety-valve provision, we have determined that the defendant has the burden of showing that he meets the factors for relief by a preponderance of the evidence and, specifically, that it is more likely than not that he did not possess a firearm in connection with the offense. *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013).

Further, we explained that our "cases interpreting guidelines that require a 'connection' have consistently recognized that a firearm which facilitates or has the potential to facilitate an offense is possessed 'in connection with' that offense." *Id*. We noted that, in considering the safety-valve, we have held that "[a] firearm found in close proximity to drugs or drug-related items simply 'has'— without any requirement for additional evidence—the potential to facilitate the drug offense." *Id*. at 92. We explained that "[a] defendant seeking relief under the safety valve, despite his possession of a weapon found in proximity to drug-related items, will have a difficult task in showing that, even so, there is no connection with the drug offense so the safety valve applies." *Id*.

Additionally, we explained that:

> While other facts, such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened. The firearm's *potential* use is critical. The Sentencing Commission gives special status to guns found in proximity to drugs.

*Id.* Thus, we held that under § 5C1.2(a)(2), "a defendant possesses a firearm in connection with a drug offense if the firearm is in proximity to drugs or if the firearm facilitates the offense, whether by emboldening an actor who had the ability to display or discharge the firearm." *Id.* at 96.

We opined that "not all defendants who receive the enhancement under § 2D1.1(b)(1) are precluded from" safety-valve relief. *Id.* at 91. We noted that, if the enhancement applies but the defendant also seeks safety-valve relief, "the district court must determine whether the facts of the case show that a 'connection' between the firearm and the offense, though possible, is not probable." *Id.* We noted that "[t]he number of defendants who meet both guidelines will undoubtedly be rare." *Id.* We concluded that our determination was "consistent with Congress's intention that the safety valve [would] apply only to a narrow class of defendants, those who are the least culpable participants in such offenses." *Id.* (quotation marks omitted).

In *United States v. Carrasquillo*, 4 F.4th 1265, 1274 (11th Cir. 2021), we determined that a § 2D1.1(b)(1) factual finding that there

is a connection between the firearm and the offense, if supported by the record, means that the defendant cannot satisfy § 5C1.2(a)(2). Moreover, we explained that to satisfy § 5C1.2(a)(2), a defendant who received a § 2D1.1(b) enhancement must show that it is more likely than not that the firearm possession was not in connection with the offense. *Id.* at 1272.

The record here demonstrates that the district court did not clearly err by finding that the firearms were near narcotics and drug paraphernalia and thus determining that Spencer was not eligible for a two-level reduction as a zero-point offender. Spencer failed to show that it was more likely than not that he did not possess a firearm in connection with the drug offense. Thus, we affirm as to this issue.

## IV.

We generally review the reasonableness of a sentence under a deferential abuse-of-discretion standard of review. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007) (holding that appellate courts review all sentences, whether inside or outside the guidelines range, for abuse of discretion). In determining procedural reasonableness, we review a district court's application of the Guidelines *de novo* and its factual findings for clear error. *United States v. Arguedas*, 86 F.3d 1054, 1059 (11th Cir. 1996). However, if a party does not raise a procedural argument before the district court, we review for plain error only. *United States v. McNair*, 605 F.3d 1152, 1222 (11th Cir. 2010). To establish plain error, a defendant must demonstrate: "(1) that the district court

erred; (2) that the error was plain; and (3) that the error affect[ed his] substantial rights. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014) (quotation marks omitted, alteration in original). If all three conditions are met, we then decide whether "the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *McNair*, 605 F.3d at 1222.

"To be upheld on appeal, a sentence must be both procedurally and substantively reasonable." *United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020) (quotation marks omitted). When reviewing the reasonableness of a sentence, we conduct a two-step inquiry, first ensuring that there was no significant procedural error, and then examining whether the sentence was substantively reasonable. *Id.* First, the district court commits a significant procedural error if it calculates the guidelines range incorrectly, fails to consider the § 3553(a) factors, bases the sentence on clearly erroneous facts, neglects to explain the sentence, or treats the guidelines as mandatory rather than advisory. *United States v. Hill*, 643 F.3d 807, 879 (11th Cir. 2011).

A sentence is substantively unreasonable only when the district court "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quotation marks omitted). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire

record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Id.* We will vacate a sentence as substantively unreasonable "only if [it is] left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors" as evidenced by a sentence "that is outside the range of reasonable sentences dictated by the facts of the case." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (quotation marks omitted).

Section 3553(a)'s "overarching" instruction to sentencing courts is that any sentence, whether within the Guidelines range or through a variance, must be sufficient but not greater than necessary to comply with the purposes listed in § 3553(a)(2). *Kimbrough v. United States*, 552 U.S. 85, 101, 128 S. Ct. 558, 570 (2007); 18 U.S.C. § 3553. Those purposes include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with any needed correctional treatment or training. 18 U.S.C. § 3553(a)(2). A district court must also consider, among other things, the nature and circumstances of the offense and the defendant's history and characteristics. *Id.* § 3553(a)(1).

Further, district courts have wide discretion to decide whether the § 3553(a) factors justify varying from the guidelines range. *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010), *abrogated on other grounds by Van Buren v. United States*, 593 U.S. 374, 395-96, 141 S. Ct. 1648, 1661-62 (2021). Even if a

particular factor is already accounted for by the Guidelines, district courts maintain discretion to use this factor to justify an upward variance. *See Goldman*, 953 F.3d at 1222. We may not presume that a sentence outside of the calculated guidelines range is unreasonable, but we should consider the extent of the variance in our analysis. *United States v. Irey*, 612 F.3d 1160, 1187 (11th Cir. 2010) (*en banc*). The mere fact that the reviewing court would have considered the factors differently does not render a district court's decision an abuse of discretion. *Rosales-Bruno*, 789 F.3d at 1254. The district court may also "consider facts that were taken into account when formulating the guidelines range for the sake of a variance." *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014). A sentencing court may impose an upward variance based upon uncharged conduct, as it relates to sentencing factors such as the history and characteristics of the defendant, respect for the law, adequate deterrence, and protection of the public. *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).

We conclude, based on the record, that as to procedural reasonableness, the district court did not plainly err because it expressly addressed the sentencing goals in the federal statutes and engaged in a discussion of the applicability of those factors to Spencer. The district court also did not abuse its discretion and impose a substantively unreasonable sentence because it reasonably weighed the § 3553(a) factors and considered Spencer's mitigating factors like his lack of criminal history. The district court has wide discretion to determine whether those factors justified a variance, and we will not vacate a sentence unless we are

"left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the §3553(a) factors." *Goldman*, 953 F. 3d at 1222. The district court did not commit a clear error of judgment here, and we affirm as to this issue.

Accordingly, based on the aforementioned reasons, we affirm Spencer's conviction and sentence.

**AFFIRMED.**